IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00383-MEH

CHARLES M. SCHMIDT,

      Plaintiff,

v.

DAVID PETEK, in an individual capacity,
BRANDON BEGGAN, in an individual capacity,
BRITTANY BRODBECK, in an individual capacity,
JUDITH LABUDA, in an individual capacity,
ANDREW HARTMAN, in an individual capacity,
ADRIAN VAN NICE, in an individual capacity,
MICHAEL DOUGHERTY, in an individual capacity,
THE ERIE POLICE DEPARTMENT,
THE TOWN OF ERIE,
THE COUNTY OF BOULDER, and
THE STATE OF COLORADO,

      Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      This action arises out of the criminal prosecution of Plaintiff in Boulder County, Colorado.

Plaintiff's Complaint purports to allege eleven causes of action. ECF 1. Each "cause of action"

is a recitation of facts specific to one of the individual Defendants, followed by a paragraph listing

every "alleged crime" committed by that Defendant. In response, all of the Defendants filed

motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) arguing the Court lacks subject

matter jurisdiction and the Plaintiff fails to plausibly state claims for which relief may be granted.

For the reasons that follow, the Court will grant the Defendants' motions and dismiss all claims.

## BACKGROUND

Plaintiff brought this case because of alleged "crimes" committed against him during his prosecution in an underlying criminal case in Boulder County, Colorado. The Court understands the criminal case to stem from an incident that occurred while Plaintiff, a bail bondsman, attempted to apprehend two individuals with outstanding warrants in Erie, Colorado. On February 18, 2018, Plaintiff and three other bondsmen entered a storage facility in Erie to pursue two targets who were suspected of living in one of the storage units. The bondsmen proceeded to make contact with the two targets and a third individual who was also living in the storage unit. During the ensuing struggle, one of the bondsmen's targets was severely beaten, and all three storage unit inhabitants were detained. Police officers from the Erie Police Department were dispatched to the facility to respond to the disturbance and conducted an investigation. The investigation resulted in an arrest warrant for Plaintiff, charging him with one count each of assault in the third degree and false imprisonment. ECF 25-2, 1. Plaintiff filed this case against police officers involved in his criminal investigation, the county court judges and district attorneys involved in his criminal prosecution, as well as the related police department, town, county, and state.

Plaintiff generally states he filed this suit "to enforce provisions of 42 U.S.C. §1938,…18 U.S.C. § 242,…and 25 U.S.C. § 1302(8)." Compl. 1-2, ECF 1. The Court construes Plaintiff's pleading to allege constitutional claims under 42 U.S.C. § *1983* (which Plaintiff confirms in his Responses) and state tort law claims. In "Plaintiff's Motion to Dismiss Defendant Hartman's Motion to Dismiss," ECF 31, Plaintiff conceded that 25 U.S.C. § 1302(8), which outlines the constitutional rights of Indian Tribes, is not applicable. Additionally, the Court disregards any claim brought under state criminal law that does not include a private right of action, as well as Plaintiff's invocation of 18 U.S.C. § 242 (criminal deprivation of civil rights). *See Allstate Ins.*

*Co. v. Parfrey,* 830 P.2d 905, 911 (Colo. 1992); *see also Houck v. Gurich*, 515 F. App'x 724 (10th Cir. 2013) ("As we noted in one of Houck's previous appeals, 18 U.S.C. § 242 does not create a private civil cause of action.").

Although the Complaint purports to allege eleven causes of action, by the Court's count, Plaintiff is alleging close to two dozen claims against the various Defendants as follows.

Defendants David Petek, Brandon Beggan, and Brittan Brodbeck are officers with the Erie Police Department. Plaintiff asserts that they committed the twelve "crimes" (construed as Plaintiff's claims against Defendants) of "fraud, perjury, harassment, slander, libel, defamation of character (calumny, vilification, or traducement), abuse of authority, violation of oath of office someone under color of law, treason, false imprisonment, false arrest, racketeering - RICO, conspiracy, collusion/complicity." Plaintiff also alleges claims for witness tampering and "false statement(s)" against Defendants Petek and Beggan.

In his Complaint, Plaintiff imputes responsibility for the claims alleged against the individual police Defendants to Defendants Erie Police Department, the Town of Erie, the County of Boulder (the county in which Erie is located), and the State of Colorado. Plaintiff does not allege any separate claims against any of these entities, but rather states summarily that each is "fully responsible, liable and accountable for any unlawful act(s)" committed by the individual police Defendants. *See* Compl. 7-8. The Court liberally construes Plaintiff's pleading as asserting a theory of vicarious liability for each of the entity Defendants, arguing that the State is vicariously liable for the County, which is, in turn, liable for the Town, which is then liable for the Police Department, which is liable for the actions of the individual police officers.

Defendants LaBuda and Hartman are judges in Colorado's 20th Judicial District, which encompasses Defendant County of Boulder and includes Defendant Town of Erie. Plaintiff claims

that both judicial Defendants committed the "crimes" of fraud, perjury, harassment, malicious prosecution, abuse of authority, violation of oath of office someone by under color of law, treason, and "racketeering - RICO, a conspiracy, collusion/complicity." Compl. 4-5. Plaintiff also alleges different, additional claims against each: he accuses Defendant LaBuda of slander, libel, defamation of character, false imprisonment, and false arrest, *id.* at 4; and he accuses Defendant Hartman of "deprivation of rights,…violation of civil rights, violation of due process of law, excess of jurisdiction of the court where none existed, [and] exceeded discretion of the court," *id.* at 5.

Lastly, Defendants Van Nice and Dougherty are, respectively, Chief Trial Deputy District Attorney and the District Attorney of Boulder County. Plaintiff alleges claims against both for "providing false statements," fraud, perjury, abuse of authority, harassment, slander, defamation of character, malicious prosecution, violation of oath of office by someone under color of law, treason, "deprivation of rights, violation of civil rights, violation of due process of law, exceed[ing] jurisdiction of the court where none existed, [and] racketeering - RICO, a conspiracy, complicity." *Id.* at 6-7. Plaintiff also made claims for "threats" and extortion against Defendant Van Nice and a claim for libel against Defendant Dougherty. *Id.*

Together, the Defendants filed four Motions to Dismiss, grouped together as follows: Defendant Hartman filed a Motion to Dismiss, ECF 14, which was later joined by and incorporated into the Motion to Dismiss filed by Defendants LaBuda and the State of Colorado, ECF 23.[1] These three Defendants, collectively, are hereafter referred to as "the State Defendants." Defendants Van Nice, Dougherty, and the County of Boulder (collectively "the Boulder Defendants") jointly filed

---

[1] Although the State Defendants filed two separate Motions to Dismiss, Defendants LaBuda and the State of Colorado's motion is simply a single sentence fully incorporating Defendant Hartman's Motion to Dismiss. For simplicity, the Court will refer to the State Defendants' motions collectively as a singular motion.

a Motion to Dismiss. ECF 15. The remaining Defendants, David Petek, Brandon Beggan, Brittany Brodbeck, the Erie Police Department, and the Town of Erie (collectively "the Erie Defendants"), jointly filed the fourth Motion to Dismiss in this case. ECF 25. The arguments raised by each group of Defendants are analyzed in turn below.

## STATEMENT OF FACTS

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These "facts" are what the Court could extract of the narrative from the Complaint, which is, to say the least, difficult to follow.

The individual police Defendants and other nonparties made sworn police statements.[2] Sergeant Gordanier's[3] sworn police statement stated, in part, "Officer Petek advised he had spoken with the bail bondsmen and learned they had jumped over the fence." Defendant Petek provided a sworn police statement which stated in part, "I also asked a day shift officer to contact the property manager, Kreg (last name unknown), to see if he wants any type of trespass charges pressed against the bonding agents." Defendant Beggan provided a sworn statement which stated in part, "I asked Kreg if he wanted to press charges against the bail bondsmen who had jumped the fence surrounding the property of the storage facility in order to contact Adrian Martinez." In an affidavit dated March 20, 2018, Defendant Brodbeck stated, "Officer Petek advised he had

---

[2] The Court presumes from information provided that the select statements from "sworn police statement[s]," which Plaintiff includes in his Complaint, are quotations from police reports made about the February 18, 2018 incident involving Plaintiff.
[3] The Court presumes from information provided that Sgt. Gordanier is a sergeant with Defendant Erie Police Department.

spoken with the bail bondsmen and learned they had jumped over the fence." Plaintiff made statements in a telephone interview.

On March 23, 2018, Defendant LaBuda executed a request for an arrest warrant for Plaintiff. The warrant was issued based on the March 20, 2018 affidavit from Defendant Brodbeck. At some point in 2018, Plaintiff was arrested pursuant to the warrant. Plaintiff's criminal complaint was signed by Defendant Dougherty and stated in part, "[u]pon Oath, the undersigned states that the facts in the attached complaint are true and that the offense(s) charged was (were) committed." The criminal complaint included the phrase "serious bodily injury." At some point after Plaintiff's arrest, Defendant Van Nice, who was the deputy district attorney prosecuting Plaintiff's case, asked the presiding judge to "enter pleas of not guilty for both co-defendants." Defendant Hartman entered a plea of not guilty on behalf of Plaintiff without advising Plaintiff of his rights, asking Plaintiff how he intended to plead, or obtaining Plaintiff's consent.

At some point Defendant Van Nice offered Plaintiff a plea deal that Plaintiff characterizes as an attempt to extort Plaintiff and "to cause fear, coercion, threat, and duress through use of threat of intimidation." Compl. 6. On or about June 26, 2018, Defendant Van Nice stated in open court that "both co-defendants un-mercilessly beat Mr. Martinez." On November 14, 2018, Plaintiff filed a motion "to Dismiss with prejudice challenging lack of personal (personam) and subject matter jurisdiction." On November 16, 2018, Defendant Hartman denied Plaintiff's motion "without providing written proof of evidence of jurisdiction on the record." On November 29, 2018, Plaintiff issued a "Notice of Fault in Dishonor with Opportunity to Cure" "granting four (4) days to Dismiss with prejudice" to Defendants Hartman and Van Nice. On or about November

30, 2018, Plaintiff sent a Writ of Praecipe to the Clerk of the Court[4] demanding the case be dismissed with prejudice for "lack of jurisdiction and failing to follow due process of law."

## LEGAL STANDARDS

### I.      Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Plaintiff bears the burden in this case of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

---

[4] The Court presumes Plaintiff is referring to the Clerk of the Boulder County Court.

First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted); *see also Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). The present motions launch both facial and factual attacks on this Court's subject matter jurisdiction; therefore, the Court will accept the Amended Complaint's factual allegations as true for its Rule 12(b)(1) analysis when necessary to analyze a facial subject matter jurisdiction attack.

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual

allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

### III.    Treatment of a Pro Se Plaintiff's Complaint

The Supreme Court has directed courts to hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 623 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 826, 202 L. Ed. 2d 579 (2019) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Tenth Circuit interpreted the *Haines* rule to mean "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991)). "This liberal-construction rule does not, however, relieve a pro se plaintiff of his burden to present sufficient facts to state a legally cognizable claim, nor will the court act as his advocate and make his arguments for him." *Id.* at 624. Accordingly, the court must "not supply additional facts, nor...construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). In addition, the Tenth Circuit instructs that courts must "hold pro se litigants to the requirements of the Federal Rules." *Clark v. Time, Inc.*, 727 F. App'x 975, 978 (10th Cir. 2018).

## ANALYSIS

### I.    Motion to Dismiss by the Erie Defendants

The Erie Defendants move to dismiss all of Plaintiff's claims for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6). The Defendants argue that the Court lacks subject matter jurisdiction as to any of Plaintiff's state tort law claims under the Colorado Governmental Immunity Act ("CGIA") and that Defendant Erie Police Department is not an entity amenable to suit. The Defendants continue that Plaintiff's pleading is deficient because Plaintiff fails to state

a cognizable RICO claim, he fails to state any cognizable constitutional claim, the individually named police Defendants are entitled to qualified immunity, and Plaintiff fails to plead facts sufficient to allege a claim against Defendant Town of Erie under *Monell v. Dept. of Soc. Servs. Of the City*, 436 U.S. 658 (1978). In their Reply, Defendants also argue that Plaintiff's Complaint should be dismissed for Plaintiff's failure to abide by Court rules and orders. The Court first addresses Defendants' pertinent arguments that challenge subject matter jurisdiction before addressing arguments as to deficiencies of pleading, if necessary.

### A. Defendant Erie Police Department

Plaintiff's "Eighth Cause of Action," is a short paragraph alleging Defendant Erie Police Department is "fully responsible, liable and accountable" for the actions of the individually named police officer Defendants because it acts "in the capacity as employer[]" for them. Compl. 7. Under Colorado law, municipalities and counties, not their various subsidiary departments, exist as "bodies corporate and politic" empowered to "sue and be sued." *See* Colo. Rev. Stat. § 31-15-101(1)(a), (b) and § 30-11-101(1)(a). Courts routinely dismiss Section 1983 claims that name and seek to impose liability directly on municipal and county police departments because police departments are not separate suable entities. *See, e.g., Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir. 1985) (dismissing Section 1983 claims because City of Denver Police Department not a separate suable entity); *Boren v. City of Colo. Springs,* 624 F. Supp. 474, 479 (D. Colo. 1985) (holding city's police department, as merely the vehicle through which city fulfills its policing functions, not a proper party); *Harper v. City of Cortez*, No. 14-cv-02984-KLM, 2015 WL 4720311, at *5 (D. Colo. Aug. 10, 2015).

The Court finds that Defendant Erie Police Department does not exist as a separate legal entity independent of Defendant Town of Erie and is not a "person" subject to suit under 42 U.S.C.

§ 1983. *See Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (finding that the Greenwood Village Police Department was not a "person" pursuant to Section 1983); *see also Martinez*, 771 F. 2d at 444. Therefore, Plaintiff's claims against Defendant Erie Police Department are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1). *Gash v. City of Denver*, No. 12–cv–00929–REB–MJW, 2012 WL 3638798 (D. Colo. Aug. 23, 2012) (dismissing claims with prejudice because "plaintiff cannot state viable claims against the Denver Fire Department or Denver Police Department as they are not juridical entities subject to suit").

**B. The Individual Police Defendants (Petek, Beggan, and Brodbeck)**

The Court construes Plaintiff's Complaint as asserting twelve claims against all three individually named police officer Defendants: "fraud, perjury, harassment, slander, libel, defamation of character…, abuse of authority, violation of oath of office someone under color of law, treason, false imprisonment, false arrest, [and] racketeering - RICO." Compl. 3-4. Plaintiff also alleges claims for witness tampering and "false statement(s)" against Defendants Petek and Beggan. Plaintiff's conclusory list of claims does not specifically identify or allege a clear constitutional violation but, rather, mostly consists of tort claims, state criminal claims, and a RICO claim. However, liberally construing the Complaint, the Court will address Plaintiff's possible constitutional claim(s) alleged against Defendants Petek, Beggan, and Brodbeck in turn with his other listed claims.

1. State Tort Law Claims

Under the CGIA, public entities and their employees are immune from claims which lie or could lie in tort, unless the employee's conduct was willful or wanton or where a waiver of immunity has been established. Colo. Rev. Stat. §§ 24-10-105, 24-10-106. Sovereign immunity issues concern subject matter jurisdiction and are determined in accordance with Rule

12(b)(1). *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000) (en banc) (citing *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997)).

Prior to bringing an action covered by the CGIA, a plaintiff is required to file a notice of claim within 182 days of discovering the alleged injury. Colo. Rev. Stat. § 24–10–109(1). "Absent compliance with the 180–day[5] notice requirement, governmental immunity bars suit against the public entity because a trial court lacks subject matter jurisdiction over the complaint seeking relief." *City & Cnty. of Denver v. Crandall*, 161 P.3d 627, 632 (Colo. 2007) (en banc) (citations omitted).

When an action covered by the CGIA is filed against a public employee, the plaintiff must state the specific factual basis of the allegations of the willful and wanton act or omission; any failure to do so must result in dismissal for failure to state a claim upon which relief can be granted. Colo. Rev. Stat. § 24–10–110(5)(b); *see also Cikraji v. Snowberger*, 2015 WL 2198516, at *4 (Colo. App. May 7, 2015) ("Complying with the notice of claim is a jurisdictional prerequisite to suit."). "[A] claimant need comply only substantially with the requirements of section 24–10–109(2) regarding the factual information contained in the claimant's notice." *Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1205 (Colo. 2000); *see also Crandall*, 161 P.3d at 632. "The plaintiff must demonstrate strict compliance with the time requirement of the notice, but only substantial compliance with the content requirements." *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 298 (Colo. App. 2009).

In this case, Plaintiff admits that the individually named police Defendants are employed by the Town of Erie, *see* Compl. 7. The Town is a "public entity," and the individual Defendants

---

[5] At the time of the Colorado Supreme Court's opinion, the statute required filing a claim 180 days after discovery.

are "public employees" within the meaning of Colo. Rev. Stat. §§ 24-10-104(4) and (5). Therefore, tort claims made against these Defendants are subject to the CGIA's procedural and substantive requirements. As the CGIA's notice requirement is a prerequisite to the Court's exercise of jurisdiction, failure to comply bars the suit. *Crandall*, 161 P.3d at 632. Defendant Town of Erie provides an offer of proof it received no notice from Plaintiff. Mot. to Dismiss 11, ECF 25. Plaintiff provides no proof, nor even argues, that he complied with the CGIA's notice requirement. Taking all facts plausibly alleged by Plaintiff as true, *Holt*, 46 F.3d at 1002, the Court finds that Plaintiff failed to comply with the procedural requirements of the CGIA and that the individual Defendants are entitled to immunity against Plaintiff's claims arising out of state tort law. Therefore, the Court lacks subject matter jurisdiction to hear Plaintiff's state tort law claims against Defendants Petek, Beggan, and Brodbeck, and they are dismissed pursuant to Rule 12(b)(1).

> 2. Constitutional Claims

Plaintiff does not clearly identify what constitutional claim he asserts but, rather, states he "brings forth suit in this action to enforce the provisions of 42 U.S.C. § 1938 [sic],…resulting in the violations against the 4th, 5th, 6th, 8th, and 14th Amendment rights." Compl. 2. Despite this blanket assertion, as to Defendants Petek, Beggan, and Brodbeck, the Complaint singularly alleges they violated Plaintiff's constitutional rights by saying or writing false statements to secure an arrest warrant. *Id*. at 3. To the extent that Plaintiff states a cognizable constitutional claim, the individually named police Defendants are entitled to qualified immunity.

Qualified immunity protects a public official whose violation of a plaintiff's civil rights was not clearly established at the time of the official's actions. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "The privilege is an immunity

from suit rather than a mere defense to liability." *Id*. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Plaintiff singularly alleges Defendants violated his constitutional rights "by uttering or writing a false statement under oath…used to secure a probable cause arrest warrant." Compl. 3. It is "a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit, or to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Hinman v. Joyce*, 201 F. Supp. 3d 1283, 1294 (D. Colo. 2016) (internal quotation omitted). Plaintiff identifies a statement from each of the individually named Defendants that he claims is false. *See id*. at 2-3, ECF 1. Plaintiff's issue with the statements seems to be that all three say the bail bondsmen (of whom Plaintiff is one) jumped over a fence to access a storage facility. The statements attributed to Defendants Petek and Beggan are contained within police reports, and not in an arrest warrant affidavit. *See id.*; ECF 25-1 at 3.[6] However, these statements were included

---

[6] The Erie Defendants provided the Court with a copy of the Officer Report of the incident for which Plaintiff was arrested as well as the Plaintiff's Arrest Warrant and related Affidavit. ECF 25-1, 25-2. Plaintiff did not incorporate by reference or attach these documents to his Complaint, but liberally construing his complaint, these documents are referred to and are central to Plaintiff's

in the affidavit supplied by Defendant Brodbeck supporting the application for Plaintiff's arrest warrant. ECF 25-2 at 2. The statement in the affidavit Plaintiff identifies as false is "Officer Petek advised he had spoken with the bail bondsmen and learned they had jumped over the fence." Compl. 4. The statement does not claim the bail bondsmen actually jumped a fence, but that Defendant Petek advised Defendant Brodbeck what he learned after speaking with the bail bondsmen. Defendant Brodbeck also included Plaintiff's own statements as to how he entered the storage facility. ECF 25-2 at 5. Plaintiff does not plausibly allege that Defendant Brodbeck knowingly included false statements in the arrest warrant affidavit or omitted material statements. Because Plaintiff does not demonstrate on the facts alleged that the Defendants violated his constitutional or statutory rights, Defendants are entitled to qualified immunity from liability for Plaintiff's constitutional claims, to the extent he alleges them. Therefore, Plaintiff's constitutional law claims against Defendants Petek, Beggan, and Brodbeck are dismissed.

### 3. RICO Claim

Plaintiff makes a claim for "racketeering – RICO, a conspiracy, collusion/complicity" against all three individual police Defendants. The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions, § 1964(c), provided that the alleged violation was the proximate cause of the injury. *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 268 (1992). "A plaintiff asserting a Section 1964(c) claim…must plausibly allege that the defendants each (1)

---

claims. The Court may properly consider the copies supplied by the Defendants without converting the motions to dismiss to motions for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also O'Hayre v. Bd. of Educ. for Jefferson Cty. Sch. Dist. R–1*, 109 F. Supp. 2d 1284, 1288 (D. Colo. 2000).

conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (internal quotations omitted).

In this case, Plaintiff has not alleged facts to state a claim for relief under RICO that is plausible on its face. In determining the plausibility of a claim, the Court looks to the elements of the particular cause of action. Although the Rule 12(b)(6) standard does not require a plaintiff to forth a prima facie case for each element, "mere 'labels and conclusions'…will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). In this case, Plaintiff has merely included "racketeering – RICO" at the end of a long list of conclusory accusations against each Defendant. Plaintiff has not pleaded factual content that could allow the Court to draw a reasonable inference that the Defendants are liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's RICO claims against the individually named police Defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Defendant Town of Erie

As with the cause of action alleged against Defendant Erie Police Department, Plaintiff alleges a theory of vicarious liability against Defendant Town of Erie for the actions of the individual police officer Defendants. The Complaint alleges that Defendant Town of Erie is "fully responsible, liable and accountable" for the actions of the individually named police officer Defendants because the Town is "acting in the capacity as a government administrator for and on behalf of the above named Municipal Police Department and their sworn Erie Police Officer(s)." Compl. 7.

As addressed above, all of Plaintiff's claims against the individually named police Defendants are properly dismissed. Because there are no remaining claims against the individually

named police Defendants, there are no claims for which Defendant Town of Erie can be vicariously liable. The Court need not address the Defendant's arguments, including that it is immune from suit under the CGIA and that Plaintiff fails plead sufficient facts to allege a constitutional claim against it. Because Plaintiff asserts no separate causes of action against the Defendant, and merely proffers a theory of vicarious liability for individuals who are cleared of any liability in this case, the claim against Defendant Town of Erie is dismissed.

The Court need not address the Defendants' other arguments for dismissal.

## II.    Motion to Dismiss by the Boulder Defendants

The Boulder Defendants—District Attorney Dougherty, Deputy District Attorney Van Nice, and the County of Boulder—argue Plaintiff's claims against them should be dismissed for six reasons: first, that the Complaint fails to state a claim entitled to relief under the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); second, Boulder County is not an entity amenable to suit and is not responsible for the actions of the other Defendants; third, this Court must abstain from exercising jurisdiction under the *Younger* abstention doctrine; fourth, all of Plaintiff's claims against Defendants Dougherty and Van Nice are barred by the *Rooker-Feldman* doctrine; fifth, Defendants Dougherty and Van Nice are entitled to absolute prosecutorial immunity; and finally, Defendants Dougherty and Van Nice are immune from suit in their official capacities under the Eleventh Amendment. The Court first addresses Defendants' arguments challenging this Court's subject matter jurisdiction before addressing arguments as to deficiencies of pleading, if necessary.

### A.  Defendant Boulder County

Plaintiff's "Tenth Cause of Action" alleges that the County of Boulder is "fully responsible, liable and accountable" for the actions of the individually named police officer Defendants because

the County is the "government administrator for and on behalf of the Town of Erie, and…Municipal Police Department." Compl. 8. Because Boulder County is not an entity amenable to suit and does not act as a "government administrator" for any of the other Defendants, Plaintiffs claims against Defendant the County of Boulder are dismissed.

Plaintiff's claims against "the County of Boulder" are invalid because a Colorado county may not be named as a Defendant in a lawsuit. Colo. Rev. Stat. § 30-11-105 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of ................'"). The Tenth Circuit has opined that this statutory provision is jurisdictional because Section 30-11-105 provides "the exclusive method by which jurisdiction over a county can be obtained" and that "[a]n action attempted to be brought under any other designation is a nullity." *Gonzales v. Martinez,* 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) (quoting *Calahan v. Jefferson Cty.,* 429 P.2d 301, 302 (1967)). In this case, Plaintiff named "the County of Boulder" as Defendant rather than the "Board of County Commissioners of the County of Boulder." *See* Compl. 1, 8. Naming the "County of Boulder" is jurisdictionally defective, and therefore Defendant County of Boulder is properly dismissed on this ground alone. *Gonzales,* 403 F.3d at 1182 n.7; *see also Sisneros v. Cnty. of Pueblo,* 09-cv-01646-PAB-MJW, 2010 WL 1782017, at *2 (D. Colo. May 3, 2010).

Although an amendment to Plaintiff's complaint would cure this technical defect, dismissal is appropriate in this case because, even properly named, Defendant County of Boulder cannot, as a matter of law, be held responsible for any of the alleged conduct of the other named Defendants. *See Sineros,* 2010 WL 1782017, at *2 (declining to grant leave to amend when "the County of Pueblo, Colorado" was named as a defendant because the Plaintiff failed to state a claim against the county defendant in his third amended complaint); *see also Pollack v. Boulder Cty.*, No. 17-

cv-02444-CMA-NRN, 2019 WL 588196, at *3 (D. Colo. Feb. 13, 2019). Plaintiff alleges the County of Boulder is the "government administrator" of Defendants Town of Erie, Erie Police Department, and the police officer Defendants. Compl. 8. However, the Town of Erie is a municipality established pursuant to Title 31 of Colorado Revised Statutes. All legislative and corporate authority of the Town of Erie is vested exclusively in the town board of trustees, *see* Colo. Rev. Stat. § 31-4-301, and the town is an independent political body separate from the County of Boulder, with its own elected officials and municipal laws. In his Response, Plaintiff disagrees and states, with no supporting authority, that the Town of Erie, its police department, and police officers "operate under the governmental corporation hierarchy as subsidiaries, which includes and incorporates…the County of Boulder." ECF 32 at 2. But, as a matter of law, the County of Boulder is not a "government administrator" for the Town of Erie and the Town of Erie is not a subsidiary of the County of Boulder's "governmental corporation." Neither Defendant County of Boulder nor its elected board have responsibility or control over the actions taken by the Town of Erie, and, by extension, those taken by its departments. Therefore, all claims against Defendant County of Boulder are properly dismissed.[7]

## B. Defendants Dougherty and Van Nice

All of Plaintiff's claims against Defendants Dougherty and Van Nice relate to Defendants' initiation and prosecution of Plaintiff's underlying criminal case in Boulder County Court. As such, Defendants are entitled to absolute prosecutorial immunity barring all of Plaintiff's claims in this case.

---

[7] Even if the County were vicariously responsible for the Town of Erie, and therefore the Erie Police Department, and therefore the individual police Defendants, as addressed above all claims against the individually named Defendants are properly dismissed. Therefore, no claims remain for which Boulder County could be vicariously liable.

Absolute immunity provides protection from suit for some public officials on the basis that "harassment by unfounded litigation would cause a deflection of the [official's] energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Prosecutors enjoy absolute immunity from civil suits for damages asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Id.* at 431.

The question of whether a prosecutor is entitled to absolute immunity for his or her actions depends on the nature of the function performed by the prosecutor at the time of the alleged misconduct. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271(1993). Actions taken as an advocate or, more specifically, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State" support absolute immunity. *Id.* at 273; *see also Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) ("[p]rosecutors are entitled to absolute immunity" for anything they do in their roles as advocates, including their "decisions to prosecute.") (quoting *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009)).

However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. Instead, prosecutors performing these acts enjoy only qualified immunity. *Id.* But, "while prosecutors may not enjoy absolute immunity for activities unrelated to advocacy, that does not mean that engaging in such activities removes their immunity for activities that are related to advocacy....absolute immunity is not 'subject to all-or-nothing application'—it can apply to some of the prosecutor's actions while not to others at the same time." *Warnick*, 895 F.3d at 751.

If prosecutorial immunity does attach, it is absolute and, therefore, applies to cases of malicious or bad faith prosecution, *Imbler*, 424 U.S. at 437, even if it is obvious "to the prosecutor that he is acting unconstitutionally and thus beyond his authority." *Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983). "[A]ctivities undertaken by a prosecutor before probable cause exists often lie outside the purview of a prosecutor's role as an advocate." *Warnick*, 895 F.3d at 752 (citing *Buckley*, 509 U.S. at 274).

> But while a lack of probable cause is a good clue a prosecutor is engaging in activity beyond the scope of advocacy, it is not determinative. Some functions—like filing charges—are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity whether or not probable cause exists. Hence the well-settled rule that prosecutors are "entitled to absolute immunity for the malicious prosecution of someone whom [they] lacked probable cause to indict."

*Id.*

In this case, Plaintiff alleges sixteen causes of action against Defendant Dougherty, including "treason" and "miscarriage of justice," because Defendant issued "false statements (criminal charges)" against the Plaintiff and the criminal complaint had "several charges that also included 'serious bodily injury.'" Compl. 7. Plaintiff alleges seventeen causes of action against Defendant Van Nice, including claims for "treason" and "deprivation of right" related to: Defendant's statements made in open court, including "instructing the presiding sitting judge to 'enter pleas of not guilty for both co-defendants'"; offering Plaintiff a plea deal; and "not complying with [Plaintiff's] motion to dismiss" his criminal case. *Id.* at 6. To determine whether the individual Defendants are absolutely immune from liability for the Plaintiff's claims, the Court analyzes the "function" of the behavior that forms the basis of the allegations.

The Court finds that the conduct of Defendants Dougherty and Van Nice are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 410. Plaintiff is concerned about statements made in the criminal complaint, statements made in open court at his

criminal proceedings, and the prosecutor's attempt to negotiate a plea deal with him. Statements made in court filings for the prosecution of criminal charges are clearly made in the course of the Defendants' roles as advocates for the State of Colorado. *See Buckley*, 509 U.S. at 273. Presenting the State's case in court proceedings and negotiating plea deals are also intimately associated with a prosecutor's role as advocate for the State. Because, taken as true, Plaintiff's allegations describe conduct "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," *id*. at 271, Defendants Dougherty and Van Nice are entitled to absolute prosecutorial immunity from liability for all of Plaintiff's claims in this case and Plaintiff's claims against them are dismissed.

The Court need not address the Defendants' other arguments for dismissal.

## III.    Motion to Dismiss by the State Defendants

The State Defendants move to dismiss all of Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). Defendants make three initial arguments as to the Court's lack of subject matter jurisdiction in this case: first, the Colorado Governmental Immunity Act ("CGIA") bars Plaintiff's state law tort claims; second, all of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine; and third, Defendant Hartman is entitled to absolute judicial immunity from liability for Plaintiff's claims and, if not, then to qualified immunity (an argument that is also applicable to Defendant LaBuda). In their Reply, the State Defendants further argue that any validly pleaded claims against Defendant State of Colorado are barred by the Eleventh Amendment. As to the sufficiency of Plaintiff's claims, the State Defendants argue that the Complaint generally fails to state a claim for relief, and in particular that Plaintiff fails to state Equal Protection, Due Process, and RICO claims.

## A. Defendants Hartman and LaBuda

Plaintiff's claims against Defendants Hartman and LaBuda relate to the Defendants' roles as judicial officers in Plaintiff's underlying criminal case in Boulder County Court. As such, Defendants are entitled to absolute judicial immunity from all of Plaintiff's claims in this case.

Under the doctrine of absolute judicial immunity, "[j]udges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000). "Moreover, '[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump,* 435 U.S. at 356–57. To illustrate the difference between acting in excess of jurisdiction and acting without jurisdiction, the Supreme Court has offered the following example:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7.

"The Supreme Court has advanced a definition for judicial immunity based on the 'functions it protects and serves,' rather than based on the person to whom it attaches." *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1294 (D. Colo. 2009). Thus, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function

normally performed by a judge, and to the expectations of the parties, i.e., whether they deal with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

Plaintiff alleges thirteen claims against Defendant LaBuda for her "execution of a request for the issuance of a probable cause arrest warrant without complaint (no victim) upon the [P]laintiff." Compl. 4. The Court finds that Defendant LaBuda was performing a function normally performed by a judge, namely, executing a warrant, and Plaintiff was interacting with her in her role as a judge. *See Stump,* 435 U.S. at 362. Plaintiff proffers no argument that Defendant LaBuda acted in the clear absence of all jurisdiction. Accordingly, Defendant LaBuda is immune from individual liability in this matter, even for any actions that may have been taken in error or with malice. *See id.* at 356–57. Because the Court finds Defendant LaBuda absolutely immune from liability for Plaintiff's claims, Plaintiffs claims against Defendant LaBuda are dismissed.

Plaintiff's fourteen claims against Defendant Hartman all relate to Defendant Hartman's role in presiding over Plaintiff's state criminal court proceeding. Plaintiff alleges that Defendant Hartman "became complicit by denying motion filed by [P]laintiff on 11/16/2018 to Dismiss with prejudice challenging lack of personal (personam) and subject matter jurisdiction filed on 11/14/2018 without providing written proof of evidence of jurisdiction on the record." Compl. 5. Taking Plaintiff's allegations as true, Defendant Hartman entered a plea of not guilty on behalf of Plaintiff in his underlying criminal proceedings without first asking the Plaintiff how he intended to plead, advising the Plaintiff of his rights, or obtaining Plaintiff's consent to enter a plea. Defendant Hartman also denied two motions filed by Plaintiff in that case.

The Court finds Defendant Hartman was performing functions normally performed by a judge when entering a plea on behalf of Plaintiff and ruling on motions Plaintiff filed in his criminal case. Plaintiff was interacting with Defendant Hartman in his role as a judge and proffers no cognizable argument that Defendant Hartman's entry of a plea or ruling on motions rendered him without jurisdiction to hear Plaintiff's criminal matter. Accordingly, Defendant Hartman is entitled to absolute judicial immunity from individual liability in this matter, even for any actions that may have been taken in error or with malice. *See Stump*, 435 U.S. at 356–57. Because the Court finds Defendant Hartman absolutely immune from liability for Plaintiff's claims, Plaintiffs claims against him are dismissed.

**B. Defendant State of Colorado**

Plaintiff's "Eleventh Cause of Action," leveled against the State of Colorado, alleges that the State is "fully responsible, liable and accountable" for the actions of the individually named police officer Defendants because the state is the "government administrator for and on behalf of the County of Boulder, Town of Erie, and…Municipal Police Department." Compl. 8, ECF 1. Plaintiff's claims against the State of Colorado are barred by the Eleventh Amendment and, therefore, are properly dismissed.

"The Eleventh Amendment bars suits against a state or its agencies, regardless of the relief sought, absent the state's affirmative waiver of its immunity or congressional abrogation of that immunity." *Wideman v. Colorado*, No. 15-cv-01664-RBJ-MJW, 2015 WL 13730881, at *3 (D. Colo. Oct. 28, 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984)). As noted, the Complaint does not assert any specific claim against the State of Colorado, but rather attempts to impute on the State vicarious liability for the actions of the individual police

Defendants, who are free of any liability in this case. However, to the extent that the Complaint can be construed to allege constitutional violations against the State pursuant to Section 1983 or state tort law claims pursuant to the CGIA, the State of Colorado is immune from suit. Plaintiff makes no argument that the State has affirmatively waived its sovereign immunity and consented to suit. Congressional enactment of Section 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-45 (1979), and the CGIA "does not effect a waiver of the state's constitutional immunity to suit in federal court, *Griess v. State of Colo.*, 841 F.2d 1042, 1044 (10th Cir. 1988). Therefore, Eleventh Amendment immunity deprives this Court of subject matter jurisdiction over any claims Plaintiff may have alleged against the State of Colorado, and Plaintiff's claims are properly dismissed.

Because all of Plaintiff's claims against Defendants Hartman, LaBuda, and the State of Colorado are properly dismissed for the reasons stated above, the Court need not address the Defendants' other arguments for dismissal.

## CONCLUSION

The Court concludes that it lacks jurisdiction to hear Plaintiff's claims against Defendants LaBuda, Hartman, Van Nice, Dougherty, the Erie Police Department, the County of Boulder, and the State of Colorado. The Court also lacks subject matter jurisdiction to hear Plaintiff's state tort law claims against Defendants Petek, Beggan, and Brodbeck pursuant to the CGIA. Plaintiff fails to state a RICO claim against Defendants Petek, Beggan, and Brodbeck and Plaintiff's constitutional claims against them, if asserted, are barred by qualified immunity. Because there are no claims properly alleged against Defendants Petek, Beggan, and Brodbeck, Defendant Town of Erie cannot be held vicariously liable for their actions.

Therefore, the Court ORDERS the following:

- District Attorney and Boulder County's Joint Motion to Dismiss [filed March 19, 2019; ECF 15] is **GRANTED**.

- Defendant Hartman's Motion to Dismiss [filed March 19, 2019; ECF 14] is **GRANTED** as to all claims against Defendant Hartman, and is **DENIED WITHOUT PREJUDICE** with leave to refile as to the Defendant's request for attorney's fees and costs.[8]

- The State Defendants' Motion to Dismiss [filed April 9, 2019; ECF 23] is **GRANTED** as to all claims against Defendants LaBuda and the State of Colorado, and is **DENIED WITHOUT PREJUDICE** with leave to refile as to the Defendants' request for attorney's fees and costs.

- The Motion to Dismiss [filed April 9, 2019; ECF 25] filed by the Erie Defendants is **GRANTED** as to all claims against Defendants Petek, Beggan, Brodbeck, Erie Police Department, and Town of Erie, and is **DENIED WITHOUT PREJUDICE** with leave to refile as to the Defendants' request for attorney's fees and costs.

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated this the 7th day of November, 2019, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[8] This request for relief is more appropriately brought in its own motion, accompanied by supporting argument.